IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN A. NEAL                                                                    PLAINTIFF


        v.                              CIVIL NO. 18-2123


ANDREW M. SAUL,[1] Commissioner
Social Security Administration                                  DEFENDANT


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, John A. Neal, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on March 2, 2016, alleging an inability to work since January 27, 2016, due to heart attacks with stents and continued pain, uncontrolled diabetes, high blood pressure, high cholesterol, arthritis,

---

[1] Andrew M. Saul, has been appointed to serve as Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

shortness of breath, fatigue, panic attacks, depression and bilateral upper extremity pain. (Tr. 78, 232, 234). An administrative hearing was held on May 1, 2017, at which Plaintiff appeared with counsel and testified. (Tr. 29-67).

By written decision dated December 28, 2017, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). Specifically, the ALJ found Plaintiff had the following severe impairments: ischemic heart disease; diabetes mellitus; hypertension; osteoarthritis; bilateral shoulder pain; diabetic neuropathy; and obesity. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he is able to lift and or carry 20 lbs. occasionally, lift and or carry 10 lbs. frequently, stand and/or walk 6 hours out of an eight hour workday, sit 6 hours out of an eight hour workday, push and pull pursuant to lift/carry limitations; reach on a bilateral basis frequently; handle and finger on a bilateral basis frequently; foot control operation on a bilateral basis frequently; able to perform work where interpersonal contact is incidental to the work performed; complexity of tasks is learned and performed by rote, with few variables and little judgment; supervision required is simple, direct and concrete.

(Tr. 16). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a deli cutter/slicer, a patch worker or an air purifier servicer. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 5, 2018. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Evidence Presented:

At the Administrative hearing held before the ALJ on May 1, 2017, Plaintiff, who was fifty-three years of age, testified that he obtained a high school education. (Tr. 35). Plaintiff's past relevant work consists of work as a dispatcher, a telephone answering service operator, a truck dispatcher broker and an armed guard. (Tr. 61).

Prior to the relevant time period Plaintiff sought treatment for various impairments including but not limited to coronary artery disease, hypertension, diabetes, hyperlipidemia, depression and anxiety.

The pertinent medical evidence before the ALJ during the relevant time period reflects the following. On January 26, 2016, Plaintiff presented to the emergency room with complaints of lower abdominal cramping. (Tr. 459-464). Plaintiff reported nausea, vomiting, diarrhea and fever. Plaintiff indicated that he had been sick for the past week. Plaintiff noted his glucose fluctuated between 95 and 260. Plaintiff was diagnosed with abdominal pain and prescribed medication. Plaintiff was to follow-up with his primary care physician in one to two days.

On March 14, 2016, Plaintiff was seen at the Good Samaritan Clinic complaining of sharp pain in his feet for the past two months. (Tr. 500-501). Plaintiff reported he recently lost his job. Treatment notes indicate Plaintiff's last primary care visit was October 2015, and his last cardiology visit was one and one-half years ago. After examining Plaintiff, the examiner diagnosed Plaintiff with Type 2 diabetes mellitus, hypertension, depression,

coronary artery disease, hyperlipidemia, neuropathy and tobacco addiction. Plaintiff was continued on his medication with the addition of Neurontin. It was recommended that Plaintiff stop smoking.

On April 4, 2016, Plaintiff was seen for a diagnostic evaluation at Western Arkansas Counseling and Guidance Center. (Tr. 503-506). Plaintiff presented with issues pertaining to anxiety and depression. Plaintiff reported he was very stressed and thought stress increased his blood pressure. Mr. Clay Connelly, LAC, recommended Plaintiff participate in individual therapy and medication management.

On April 6, 2016, Plaintiff was seen at the Good Samaritan Clinic for a follow-up. (Tr. 509-510). Plaintiff complained of pain across his chest and down his legs. Plaintiff reported pain when he got up and moved around. After examining Plaintiff, the examiner assessed Plaintiff with diabetic neuropathy and opined that peripheral vascular disease was probably causing pain in Plaintiff's legs and feet. Plaintiff was to continue taking aspirin but stop taking Plavix. The examiner noted that it was much more important for Plaintiff to stop smoking.

On April 19, 2016, Dr. Kristin Jarrard, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative and environmental limitations were not evident. (Tr. 85-86).

4

On April 20, 2016, Plaintiff was seen at the Russellville Family Clinic for a follow-up visit. (Tr. 518-521). Dr. Ben Kriesel noted Plaintiff presented with Type 2 diabetes complicated by nephropathy. Plaintiff was not on insulin. Dr. Kriesel noted Plaintiff's compliance with treatment had been poor as Plaintiff did not follow a diet or exercise regimen. Plaintiff reported experiencing a mild degree of depression and that he was doing well on medication without any significant symptoms. Upon examination, Dr. Kriesel noted Plaintiff had a normal gait and normal tone and muscle strength. Plaintiff was assessed with Type 2 diabetes, depression, hypertension, gastrointestinal reflux disease and acute sinusitis. Medications were refilled and Plaintiff was to follow-up in three months.

On April 21, 2016, Dr. Diane Kogut, a non-examining medical consultant, completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 86-89). On the same date, Dr. Kogut completed a Psychiatric Review Technique form opining that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation, each of an extended duration. (Tr. 84). Dr. Kogut opined Plaintiff was able to perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, few variables, little judgment; and supervision required is simple, direct and concrete (unskilled). On August 25, 2016, after reviewing the records, Dr. Laurie Clemens affirmed Dr. Kogut's opinion. (Tr. 124, 128-130).

On May 2, 2016, Plaintiff was seen at Western Arkansas Counseling and Guidance Center for a psychiatric assessment by James Gattis, APRN. (Tr. 555-558). Plaintiff was self-referred for worrying. Plaintiff reported over the past year he had panic attacks with

symptoms including shortness of breath, chest tightness, palpitations and nausea. Plaintiff also reported getting down on himself. Plaintiff reported he took medication for his depression and found the medication helpful at first. Plaintiff was assessed with major depressive disorder with melancholic features and a generalized anxiety disorder. Plaintiff was prescribed medication and the importance of CPAP use was discussed with Plaintiff. Plaintiff was to continue with therapy.

On May 12, 2016, Plaintiff was seen in the Mercy Hospital Fort Smith emergency room complaining of high blood sugar. (Tr. 523-539, 553). Plaintiff reported difficulty controlling his blood sugars and that he had not been feeling well. Plaintiff complained of intermittent dizziness and chest pain and increased neuropathy and falling. Plaintiff reported recent emotional stress and a blood blister on his abdomen that was oozing and smelled. Plaintiff reported he continued to smoke. Plaintiff was assessed with uncontrolled blood glucose, an abscess of the abdominal wall and sleep disturbance.

On July 10 2016, Plaintiff was seen in the Mercy Hospital Fort Smith emergency room complaining of high blood sugar. (Tr. 540-552). Plaintiff's blood sugar was noted to be 520. Plaintiff reported he had eaten a piece of apple pie earlier in the evening. Upon examination, Plaintiff was found to have normal range of motion in his neck and spine. Plaintiff was noted to have a normal mood and affect. It was recommended that Plaintiff discuss starting insulin therapy with his primary care physician.

On August 3, 2016, Plaintiff was seen by Dr. Vijay Kannam to establish care for his diabetes. (Tr. 662-671). Plaintiff reported his blood sugars had been in the 300-400 range. Plaintiff reported that he thought he could just adjust his diet and exercise but had been unable to do so due to his chronic pain conditions. Dr. Kannam noted Plaintiff was now

willing to start insulin.  Plaintiff reported his blood pressure had been running high and that

he had some stressful situations at home.  Plaintiff reported that his depression was okay but

he did not think it was well-controlled.  Plaintiff was prescribed medication and instructed to

return for a follow-up in two weeks.

On August 17, 2016, Plaintiff was seen by Dr. Kannam for a follow-up for his

diabetes and hypertension.  (Tr. 656-662, 819-822).  Dr. Kannam advised Plaintiff to

continue at least thirty minutes of activity five days of the week.  Plaintiff's blood pressure

was noted to be controlled with medication.

On August 17, 2016, Plaintiff was later seen in the emergency room due to abnormal

lab results revealing low sodium.  (Tr. 792-808).  Labs in the emergency room were normal

with the exception of elevated glucose due to poorly controlled diabetes.  Plaintiff was

discharged home to follow-up with his primary care physician for possible repeat labs.

On August 24, 2016, Plaintiff was seen by Dr. Fernando Arzola for a new patient visit

for his coronary atherosclerosis and essential hypertension.  (Tr. 603-607, 648-656).  Upon

examination, Dr. Arzola noted Plaintiff was oriented to time, place, and person and had a

normal affect.  Plaintiff exhibited a normal gait and had no joint tenderness or swelling.

Plaintiff had normal motor strength and tone.

On August 26, 2016, Plaintiff complained of blurry vision. (610, 811-812).  Plaintiff

reported his blood sugars had been out of whack and his vision seemed to be worse.

On August 29, 2016, Plaintiff underwent an echocardiogram that revealed normal left

ventricular dimensions with a good systolic function and a grade 2 diastolic dysfunction; and

trace tricuspid valve insufficiency.  (Tr. 621-623).

7

On September 12, 2016, Plaintiff underwent a two day cardiolite examination that revealed a diminished ejection fraction with global hypokinesis; and a fixed area of diminished perfusion in the interior wall left ventricle near the base of the heart that may represent an old scar or diaphragmatic attenuation. (Tr. 625-627). Plaintiff also underwent an exercise stress test that was normal.

On September 13, 2016, Plaintiff underwent x-rays of the left knee that revealed mild degenerative joint disease at the medial compartment and patellofemoral compartment. (Tr. 635). X-rays of the right knee revealed mild degenerative joint disease at patellofemoral compartment with small osteophytes. (Tr. 636).

On September 14, 2016, Plaintiff was seen by Dr. Arzola for a follow-up for his chest pain. (Tr. 640-647). After examining Plaintiff, Dr. Arzola noted Plaintiff needed to follow-up with his primary care physician.

On September 27, 2016, Plaintiff reported that his blood sugar had come down but he still had headaches and trouble reading. (Tr. 810).

On October 17, 2016, Dr. Alice M. Davidson, a non-examining medical consultant, completed a RFC assessment opining that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk for a total of six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative and environmental limitations were not evident. (Tr. 125-128).

8

On November 1, 2016, Plaintiff complained that his eyes were still blurry but his blood sugar was still running high. (Tr. 809).

A treatment review dated November 16, 2016, revealed Plaintiff's report that he continued to struggle with stress which had an adverse reaction to his body. (Tr. 696-702). Plaintiff reported his daughter was now living with him which had brought on further stress. Plaintiff was also sad about his medical issues and financial constraints.

On November 17, 2016, Plaintiff was seen by Dr. Kannam for a follow-up appointment. (Tr. 814-819). Plaintiff reported that he did not exercise regularly. Plaintiff complained of feeling pins and needles in his lower extremities. Plaintiff reported a worsening of pain since his gabapentin prescription ran out. Upon examination, Plaintiff exhibited a normal gait and had normal muscle strength. Plaintiff was found to have decreased sensation on the dorsum of the foot, bilaterally. Plaintiff's medications were refilled and gabapentin and Neurontin were added to treat his diabetic peripheral neuropathy.

On January 18, 2017, Plaintiff attended individual therapy with Mr. Connelly. (Tr. 824-825). Plaintiff reported that he was now living with his sister, as he and his son could no longer afford to live alone. Mr. Connelly noted Plaintiff seemed down during the session. Plaintiff talked about wanting to be patient in terms of disability but was depressed and anxious about having to live with his sister. Plaintiff thought his medical issues were causing him a lot stress.

On February 10, 2017, Plaintiff presented to the emergency room complaining of an abscess to the right groin. (Tr. 828-832). Upon examination, Plaintiff was found to have

normal range of motion of the neck, a normal heart rate and no edema.  Plaintiff was assessed with a cutaneous abscess.

On February 16, 2017, Plaintiff attended individual therapy with Mr. Connelly.  (Tr. 826-827).  Plaintiff reported he was easily irritated and moody.  Plaintiff talked about the frustration living with his sister and his inability to control his irritability.  Plaintiff reported struggling living with his sister but had no other choice.

On March 24, 2017, Plaintiff was seen by Dana K. Pulliam, APRN, to establish care to treat his diabetes.  (Tr. 836-837).  Nurse Pulliam noted Plaintiff was using both oral and injectable treatment for his diabetes.  Plaintiff reported he had never had education regarding his diabetes and admitted to a poor diet.  Plaintiff's gastroesophageal reflux disease and hypertension were noted as controlled with medication.  Plaintiff denied chest pain or discomfort and reported his leg neuropathy was stable, but he noted sensory disturbances to the legs bilaterally.  Plaintiff was prescribed medication and labs were ordered.

On March 30, 2017, Plaintiff was seen by Pixie King, RDN, LD, CDE, for medical nutrition therapy.  (Tr. 835-836).  The importance of smoking cessation was discussed.

On April 7, 2017, Plaintiff complained of bilateral shoulder pain.  (Tr. 833-834, 841).  Plaintiff reported that he was in the process of seeking disability and was advised by his attorney that he needed to be evaluated by an orthopedic doctor.  Upon examination, Nurse Pulliam noted Plaintiff showed abnormalities at the bilateral anterior joint with limited range of motion in all planes.  Nurse Pulliam noted Plaintiff did not have sensory abnormalities and exhibited a normal gait.  Plaintiff's mental status exam was normal.  X-rays of Plaintiff's

right and left shoulders revealed early degenerative change of the bilateral acromioclavicular joints with no acute osseous abnormality.

On April 7, 2017, Plaintiff attended individual therapy with Mr. Connelly. (Tr. 847-848). Plaintiff reported he had been feeling somewhat happier. Plaintiff reported that he and his son moved out of his sister's house and into their own apartment. Plaintiff reported he was proud of his son for working full-time. Plaintiff reported he was still hurting and had not been approved for disability.

On April 26, 2017, Plaintiff was seen by Dr. Ramya Smitha Suryadevara for a follow-up for his coronary arteriosclerosis. (Tr. 864-867). Upon examination, Plaintiff was found to have normal S1 and S2, no murmurs, rubs, or gallops; and a regular rate and rhythm. Plaintiff was found to have normal muscle strength and tone and no edema. Plaintiff exhibited a normal gait and station. Dr. Suryadevara assessed Plaintiff with stable coronary arteriosclerosis, with atypical chest pain that was musculoskeletal in nature. Plaintiff was found to have well controlled blood pressure.

On May 1, 2017, Plaintiff was seen by Nurse Pulliam for a follow-up for his diabetes and bilateral leg pain. (Tr. 849-850). Plaintiff reported sharp foot pain for the past two years that had responded well to gabapentin. Over the past six months, Plaintiff reported increased pain at his ankles and plantar surface. Nurse Pulliam noted Plaintiff was a diabetic and that he was noncompliant with his diet. Upon examination of Plaintiff's feet, Nurse Pulliam observed no soft tissue swelling, no localized joint swelling and no localized joint stiffness. Plaintiff exhibited a normal gait. Peripheral neuropathy was noted "sensorium to temp in tact-pain with light touch on bilateral plantar surfaces." Plaintiff had a normal mental status exam. Plaintiff was prescribed gabapentin.

11

On May 3, 2017. Plaintiff was seen by Dr. Edward Rhomberg for his bilateral shoulder pain. (Tr. 858-860). Dr. Rhomberg noted Plaintiff's pain was greater in his left shoulder. Plaintiff reported the pain increased by elevation of the arm. Plaintiff denied numbness or tingling. After examining Plaintiff, Dr. Rhomberg diagnosed Plaintiff with impingement syndrome of the left shoulder and primary osteoarthritis of the left shoulder. Dr. Rhomberg recommended shoulder arthroscopy which was performed on May 8, 2017. (Tr. 861-863).

## III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted

at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§ 404.1520, 416.920.

IV.  **Discussion:**

Plaintiff argues the following issue on appeal: 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ erred in his performance of the psychiatric review technique

(PRT) and in determining Plaintiff's severe impairments; and 3) ALJ erred in determining Plaintiff's RFC.

### A.     Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).  After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.     Plaintiff's Impairments:

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c).  While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p.  The claimant has the burden of proof of

showing he suffers from a medically-severe impairment at Step Two.   See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe.  See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

With respect to Plaintiff's alleged mental impairments, the ALJ found Plaintiff's mental impairments to be non-severe; however, the ALJ clearly considered these alleged impairments as the ALJ limited Plaintiff to unskilled work. After reviewing the record as a whole, the Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

C.     Subjective Complaints and Symptom Evaluation:

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2)

the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record revealed that during the relevant time period Plaintiff was able to take care of his personal needs, noting some difficulty with socks and shoes; to prepare simple meals; to do light house chores; to shop in stores for groceries and clothes; and to watch sports on television. (Tr. 275, 307).

With respect to Plaintiff's alleged impairments, both physical and mental, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir.1998); See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). The Court notes Plaintiff underwent an arthroscopy of the left shoulder in May of 2017, but there is no indication that the procedure was unsuccessful and no physician opined Plaintiff was more limited than what is set out in the RFC.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court

16

concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**D.      The ALJ's RFC Determination and Medical Opinions:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).   It is assessed using all relevant evidence in the record.  Id.   This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.   Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."   Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).   Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).   "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In determining that Plaintiff maintained the RFC to perform light work with limitations, the ALJ considered the medical assessments of the non-examining agency medical consultants; Plaintiff's subjective complaints; and his medical records.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined during the relevant time period.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

The ALJ also took Plaintiff's obesity into account when determining Plaintiff's RFC.  Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).  After reviewing the entire transcript, the Court finds substantial evidence supporting the ALJ's RFC determination for the time period in question.

> **E.      Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a deli cutter/slicer, a patch worker or an air purifier servicer during the time period in question.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.      Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 20th  day of  August 2019.

/s/  *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE